IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILBERT KIRKS and DENNIS KIRKS, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GENERAL ELECTRIC COMPANY, et al., )<br>)<br>Defendants. ) | Civ. No. 08-856-SLR |
| LEE WIERSMA and JANICE WIERSMA, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GENERAL ELECTRIC COMPANY, et al., )<br>)<br>Defendants. ) | Civ. No. 08-857-SLR |

Thomas C. Crumplar, Esquire, of Jacobs & Crumplar, P.A., Wilmington, Delaware. Counsel for Plaintiffs.

Josette F. Spivak, Esquire, of Hollstein Keating Cattell Johnson & Goldstein P.C., Wilmington, Delaware. Counsel for Defendant General Electric Company.

**MEMORANDUM OPINION**

Dated: September 17, 2009
Wilmington, Delaware

*[signature]*
**ROBINSON, District Judge**

## I. INTRODUCTION

Pending before the court are motions to remand separate but substantially identical cases. (Civ. No. 08-856, D.I. 4; Civ. No. 08-857, D.I. 4) Both cases involve asbestos claims against a number of defendants, including General Electric Company ("GE"). In each, GE removed the case from the Superior Court of the State of Delaware to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1442(a)(1)[1] ("federal officer removal statute"). Plaintiffs[2] in both cases filed motions to remand their respective actions to State court pursuant to § 1447(c). In its opposition to both motions to remand, GE attached the same three affidavits, which it claims support removal to federal court and will require this court to deny the motions to remand.

## II. BACKGROUND

### A. *Kirks v. Carborundum Corp.*, Civ. No. 08-856

Plaintiff Dennis Kirks brought suit on November 13, 2007 against numerous defendants on behalf of plaintiff-decedent Wilbert Kirks. Dennis Kirks is the executor of Wilbert Kirks' estate. (Civ. No. 08-856, D.I. 1, ex. A at ¶ 7) Wilbert Kirks served aboard the USS Leyte between 1953 and 1957 as a boatswain's mate, and allegedly was exposed to asbestos through turbines manufactured by GE. (*Id.*, D.I. 1, ex. A; D.I. 5, ex. A) Wilbert Kirks died from mesothelioma on May 7, 2007. (*Id.*, D.I. 1, ex. A at ¶¶ 5,

---

[1] All section number references herein refer to Title 28 of the United States Code.

[2] Plaintiffs in each case are represented by the same counsel, and have filed substantially identical motions and arguments in support of remand.

6)

### B. *Wiersma v. A.W. Chesterton Co.*, Civ. No. 08-857

Plaintiff Janice Wiersma brought suit on or about January 29, 2008 against numerous defendants on behalf of plaintiff-decedent Lee Wiersma. Janice Wiersma is the executrix of Lee Wiersma's estate. (Civ. No. 08-857, D.I. 1, ex. A at ¶ 8) Lee Wiersma served as a radio operator aboard the USS Wright between 1965 and 1969, and allegedly was exposed to asbestos through turbines manufactured by GE. (*Id.*, D.I. 1, ex. A at ¶ 13; D.I. 5, ex. A) Lee Wiersma died from mesothelioma on July 1, 2007. (*Id.*, D.I. 1, ex. 1)

### III. STANDARD OF REVIEW

The federal officer removal statute reads in pertinent part:

> (a) **A civil action** . . . commenced in State court against any of the following **may be removed by** them to the district court of the United States for the district and division embracing the place where it is pending.
>
>> (1) The United States or any agency thereof or **any officer (or any person acting under that officer) of the United States** or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

§ 1442(a)(1) (emphasis added). The party removing an action to federal court bears the burden of proving that removal is appropriate. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). The Third Circuit has held that the provisions of the federal officer removal statute, § 1442(a)(1), are to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *see also, Megill v. Worthington Pump, Inc.*, Civ. No. 98-076, 1999 WL 191565, at *2 (D. Del. Mar. 26, 1999). Indeed, the Supreme Court has held that "the right of removal is absolute for

2

**conduct performed under color of federal office**, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' " *Ariz. v. Manypenny,* 451 U.S. 232, 242 (1981) (citation omitted) (emphasis added).

To establish removal jurisdiction under § 1442(a)(1), a defendant must establish the following:

> (1) it is a "person" within the meaning of the statute;
> (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a **federal office**;
> (3) it raises a colorable federal defense; and
> (4) there is a causal nexus between the claims and the conduct performed **under color of a federal office**.

*Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California,* 489 U.S. 121, 129 (1989)) (emphasis added). There is no dispute that GE, as a corporation, is a "person" within the meaning of the statute. *See Good v. Armstrong World Indus., Inc.,* 914 F. Supp. 1125, 1128 (E.D. Pa. Jan. 18, 1996).

With respect to the second element, GE must establish that a "federal office"[3] was the source of the specific act for which the contractor now faces suit. *See Holdren v. Buffalo Pumps, Inc.,* 614 F. Supp. 2d 129, 138 (D. Mass. May 4, 2009). In both cases at bar, the gravamen of the complaints is GE's alleged failure to warn of the

---

[3]As seen above, the Third Circuit in *Feidt* used the phrase "federal office" (consistent with the Supreme Court's decision in *Arizona v. Manypenny,* 451 U.S. at 242), not the phrase "federal officer." As a result, the distinction made by some courts between direction by the Navy and direction by a specific federal officer is not compelling. *See, e.g., Good v. Armstrong World Indus.,* 914 F. Supp. at 1129.

dangers of asbestos.[4] In order to show that a government contract displaces the state tort law duty to warn under the federal contractor defense, a defendant

> must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. . . . The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, . . . and thus that the government itself "dictated" the content of the warnings meant to accompany the product.

*In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990).

To demonstrate that the federal government sufficiently controlled the warnings issued in connection with GE's turbines, GE has submitted three affidavits. GE's first affidavit is the declaration of Admiral Ben J. Lehman ("Admiral Lehman"). (D.I. 5, ex. B)[5] Admiral Lehman is a retired Rear Admiral of the United States Navy. While in the Navy, Admiral Lehman served in a number of positions, including Ship Superintendent at the Brooklyn Navy Yard (1942-44), Ship Superintendent at the San Francisco Naval Shipyard (1950-52), and Planning Officer at the Assistant Industrial Management Office in San Francisco (1952-54). He was promoted to Rear Admiral in the Naval Reserve in 1977. During his time away from the Navy, Admiral Lehman worked as an engineer at GE (1946-48), and as the director of engineering and vice-president of engineering at two major shipbuilding companies (1969-75). In his affidavit, Admiral Lehman attests "to the level of supervision and control by the United States Navy and

---

[4]Although plaintiffs have asserted claims which are not based on the failure to warn, for simplicity, the remaining discussion focuses on their failure-to-warn claims.

[5]Because of the duplicative nature of the records of these two actions, all docket index references henceforth are made to Civ. No 08-856.

its officers over every aspect of design and manufacture of equipment intended for installation on Navy vessels." (*Id.* at ¶ 2) The declaration states that, in "the 1940s and afterward, the Navy had complete control over every aspect of each piece of equipment used on Navy ships. . . . **This control included the decision of what warnings should or should not be included.**" (*Id.* at ¶ 5) (emphasis added) Based on his experience, Admiral Lehman believes that "equipment suppliers were prohibited from providing any warnings on or to accompany equipment supplied to the Navy without the consent and approval of the Navy." (*Id.* at ¶ 7)

GE also filed the affidavit of Lawrence Stillwell Betts, MD, PhD ("Dr. Betts") to support the proposition that the Navy possessed state of the art knowledge on the dangers of asbestos. (D.I. 5, ex. C)[6] Dr. Betts served in the Navy from 1972 to 2001. In his affidavit, Dr. Betts states that, "[d]uring the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam turbine on United States Navy ships known by a turbine manufacturer, like [GE], that was not known by the United States and the United States Navy." (*Id.* at ¶ 29) Dr. Betts concludes that "[i]t would be unreasonable to assume that the Navy would have accepted unsolicited and gratuitous comments from equipment manufacturers about the hazards" of asbestos when the equipment manufacturers were not experts on the subject matter. (*Id.* at ¶ 31)

David Hobson ("Hobson") was employed by GE between 1969 and 1996. His

---

[6]This affidavit includes a voluminous appendix of more than 500 pages which provides documents showing the knowledge the Navy possessed with regard to asbestos during the relevant time period.

last position at GE was Manager of Navy Customer Service for GE's Navy and Small Steam Turbine Department. Hobson's affidavit attests "to the extensive level of supervision and control by the United States Navy and its officers, such as the Inspector of Naval Machinery, over GE's design and manufacture of Navy turbines." (D.I. 5, ex. D at ¶ 3) According to Hobson, GE performed all of its work on Navy turbines under the immediate supervision of the Navy. (Id. at ¶ 7) The Navy exercised control over all aspects of the design, manufacture and testing of turbines through "contract documents, . . . written specifications and personal oversight." (Id.) Specifically, government contracts which bound GE would incorporate pertinent specifications that "spell[ed] out in minute detail the Navy's requirements concerning every aspect of the materials and composition of devices like Navy turbines." (Id. at ¶ 8) Hobson states that the Navy "exercised absolute authority to determine precisely what hazards aboard ship would be subject to warnings and the . . . content of any such warnings." (Id. at ¶ 24)

Consistent with the above affidavits, the court concludes that GE has satisfied its burden to prove that plaintiffs' failure-to-warn claims are based upon GE's conduct "acting under" the office of the Navy and its officers. With respect to the next element, that is, whether GE has raised a colorable federal defense, GE has asserted the federal common law government contract defense. According to the Supreme Court, a federal contractor will not be liable for design defects in military equipment under state tort laws when:

    (1) the United States approved reasonably precise specifications;
    (2) the equipment conformed to those specifications; and
    (3) the supplier warned the United States about the dangers in the use of the

equipment that were known to the supplier but not to the United States.[7] *Boyle*, 487 U.S. at 512-513. Based on the three affidavits provided by GE, the court concludes that GE has raised a colorable federal defense, that is, the federal common law government contract defense. Moreover, the three affidavits satisfy the requirement that GE sufficiently demonstrate a causal nexus between plaintiffs' failure-to-warn claims and the Navy's control over the warnings provided by GE on its turbines. Therefore, GE has established federal officer removal jurisdiction.

This conclusion is supported by similar decisions, based upon one or more of these affidavits, that the federal officer removal statute has been satisfied where Navy regulations required the use of asbestos and mandated what warnings were required concerning asbestos.[8] *See e.g., Pease v. A.W. Chesterton Co.*, Civ. No. 08-624, D.I. 36 (D. Del. Dec. 1, 2008);[9] *Chicano v. General Electric Co.*, Civ. No. 03-5126, 2004 WL

---

[7]"The first two of these conditions assure that . . . the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512-13 (1988).

[8]The court recognizes that its decision in *Megill* is contrary to the above conclusion. However, the *Megill* decision was based on a different record, notably, evidence such as that presented in the three affidavits filed in the cases at bar was not presented by the defendant in *Megill*. 1999 WL 191565, at *4.

[9]The plaintiff, alleging injuries caused by asbestos exposure through GE turbines aboard Navy ships, was represented by the same counsel who represents both plaintiffs in the cases at bar. (Civ. No. 08-624, D.I. 1) In *Pease*, GE similarly removed the case to federal court based on the federal officer removal statute. *Id.* GE relied on the affidavits of Lehman, Betts, and Hobson to support removal to federal court. (*Id.*, D.I. 12) Relying on the affidavits, the court found that GE had satisfied all the elements of the federal officer removal statute.

2250990 (E.D. Pa. Apr. 6, 2004); *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99 (D. Conn. Sept. 17, 2007) (holding that Lehman affidavit shows a causal nexus between the claims and conduct performed under the color of a federal office); *Reaser v. Allis Chambers Corp.*, Civ. No. 08-1296 (C.D. Cal. June 23, 2008) (relying on Lehman and Betts affidavits to find removal appropriate for failure-to-warn claims against GE related to asbestos use aboard Navy ships); *Nesbiet v. General Electric Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. Mar. 28, 2005) (relying on Hobson, Lehman and Betts affidavits to find removal appropriate for failure-to-warn claims against GE related to asbestos use in turbines on Navy ships).

The court notes that there are decisions rejecting evidence such as that proffered by GE, instead requiring a higher threshold of evidence to establish federal officer removal jurisdiction. For instance, in *Holdren v. Buffalo Pumps, Inc.*, the district court not only required the contractor to demonstrate that "the decision to warn must be the government's, not the contractor's," but that the decision also "reflect a federal interest incompatible with the important health and safety requirements of state law." 614 F. Supp. 2d at 137. *See also, Good v. Armstrong World Indus.*, 914 F. Supp. at 1131 (because "asbestos is no longer used in the design and manufacture of equipment," the lawsuit "does not threaten the enforcement of a federal policy sufficient to warrant removal."). While these considered opinions have merit, given that the provisions of the federal officer removal statute are to be construed broadly,[10] and given

---

[10]Unlike the general removal statute, § 1441, which is to be construed so that all doubts are to be resolved in favor of remand. *Compare Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d at 1262, *with Boyer v. Snap-on Tools Corp.*, 913 F.2d at 111.

that GE has produced evidence demonstrating a significant degree of control by a federal office over the warnings related to the dangers of asbestos, I respectfully reach a contrary conclusion.

## V. CONCLUSION

For the reasons stated above, the court denies plaintiffs' motions to remand the cases to State court. An appropriate order will issue.